————o————

HANCOCK, ROACH & Co., Plaintiffs in Error, *vs.* H. CLAY EWING, *et al.*, Defendants in Error.

1. *Penitentiary—Contracts for labor may be interfered with by act of Legislature.*—Neither the warden nor the inspectors of the State Penitentiary can make contracts for convict labor, which will preclude the Legislature from adopting another system necessarily interfering with the execution of such contracts. If parties contracting with the State thereby sustain loss, they undoubtedly have a claim against the State, but such as it is not in the province of the courts to allow.

*Error to Cole Circuit Court.*

*Lay & Belch,* for Plaintiffs in Error.

I. The act of March, 1873, authorizing the leasing of the penitentiary, refers to the contract of plaintiffs and others of the same kind in direct terms, and gives sixty days in which the contractors are to wind up their business and turn it over to the lessees. There can be no doubt, but that the effect of this act, if carried out, is to impair the obligations of their contract, and that it was so intended by the Legislature. In so far as it does this, we submit that it is in violation both of the constitution of the United States and of this State, and is void as to these plaintiffs. (Article 1, § 10, Constitution of U. S., Wagn. Stat., p. 23; Art. 1, § 28, Constitution of Mo., Wagn. Stat., p. 37.) And there is no question, whatever, but these provisions apply to contracts between the.State and individuals. (Cooley's Constitutional Limitations, side pages 127, 274, 275, and authorities cited.)

*J. L. Smith & H. Clay Ewing, Att'y Gen'l*, for Defendants in Error.

I. The second ground of objection contained in the demurrer to the petition is fatal. A contract is *defined* to be contrary to public policy in the sense of the law, where it is injurious to, or subversive of, the public interest. Such contracts are classed under the head of constructive frauds. (II Bouvier Law Dict., 349 ; Story Eq., § 260 ; Christopher vs. Janssen, 1 Atk., 352.)

It is insisted that the contract set forth in plaintiff's petition is injurious to, and subversive of, the public interest. It is a constructive fraud on the State.

The history of the State Penitentiary, as detailed in the various journals and enactments of the State Legislature, shows conclusively, that this institution, conducted and operated by the officers and agents of the State for the last few years, has furnished one of the largest items in the current expenses of the State. The expense of its maintenance has so rapidly increased within the last decade that it has become a source of just alarm, and has provoked a series of legislative investigations, resulting in the developments of peculation, venalty and fraud upon the public. (See Acts 1873-4.)

Can it be truthfully asserted, that the warden and inspector could lease the work-shops and hire out all the skilled convict labor in the penitentiary for.a period of six years from January 15, 1872, and thereby exclude the State from any control or disposition thereof until the expiration of said period, and that such contracts were not injurious to, and subversive of, the public interests? Does not such contract operate as a constructive fraud upon the State?

It must be considered, that the Legislature has the right and power to change the manner of penal servitude. The State has the right, through its Legislature, to abolish altogether, as a penalty for violated law, imprisonment with hard labor. It might choose to make the penalty simple imprisonment without labor, or labor half the time, or substitute solitary imprisonment alone for the present system. Indeed, the right of the State to change its system altogether, and adopt any other the wisdom of the Legislature may suggest, must be unquestioned.

We insist, then, that the proper basis, upon which to decide this case, is squarely upon the question of public policy.

NAPTON, Judge, delivered the opinion of the court.

This was an application for an injunction against the defendants, who are inspectors, ex officio, of the penitentiary, and who, by virtue of an act of the Legislature, passed March 22, 1873, entitled "an act to lease the State Penitentiary for a period of ten years," were about to lease the same, on the ground that plaintiffs had a contract with a former warden for the hire of a certain number of convicts for five years, and the term had not expired. To this petition there was a demurrer, and the demurrer was sustained, and this involves the only question in the case.

The question is, whether the warden of the penitentiary. or the supervisors, called inspectors, or both, can make contracts for convict labor which will preclude the Legislature from adopting another system necessarily interfering with the execution of such contracts, and we are clearly of the opinion

that this could not be done. Such contracts, it may be conceded, are warranted by the law, and seem in various instances to háve been made and sanctioned by the Legislature, but all such contracts must necessarily imply a right on the part of the Legislature to change its policy in regard to the penal system. This is a necessary result of the peculiar character of such contracts. It may be that the Legislature will abolish the whole system and require solitary confinement without labor, as we know is the policy of some States, or it may happen that the number of convicts will not enable the warden to furnish the contractors with the number called for in the contract. Or it may be, as was the case here, that the management is taken from the State officials and the penitentiary leased, and the parties to such contracts must be presumed to know that such changes of policy may occur.

Whether the warden and inspectors under the old law could make contracts exceeding the time in which their official terms expired, is not material. That they did so in repeated instances, may be conceded, and that the Legislature sanctioned such contracts may also be conceded, but in this case the Legislature declined to do so, and adopted a new system, which they had undoubted power to do. If the plaintiffs by this sustained a loss, they undoubtedly have a claim against the State; but such a claim it is not in the province of the courts to allow, much less can the courts interfere by injunction to prevent the execution of the law.

Judgment affirmed. The other judges concur; Judges Wagner and Sherwood absent.